## HARRISON *v.* HAMMOND

[No. 473, September Term, 1970.]

*Decided June 25, 1971.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Michael A. Schuchat* for appellant.

*Joseph A. Mattingly* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

In 1960 Harrison, Hammond and Singleton, each investing $2,000, set up Harrison Associates, Inc. (HA), to engage in the electrical contracting business. Singleton withdrew in 1962. Harrison and Hammond kept the business going until 1968 when, for reasons undisclosed, it began to fall apart. Harrison, as president, handled the contracting activities; Hammond, as treasurer, looked after the financial end. Indeed he was HA's Maecenas; he used his own money and credit to provide the necessary working capital. HA's principal source of supply was Dominion Electric Supply Co. (Dominion). Customarily when Dominion furnished materials for an HA contract it would take HA's confessed judgment note, endorsed by Harrison and Hammond, for the balance due; then it would discount the note at Citizen's Bank of Maryland (the bank). The curtailment and renewal of these notes had become a routine operation. Early in May 1968 a note, dated 4 April 1968, in the amount of $15,000, became due. When Harrison refused to endorse the renewal note the bank bounced the note back to Dominion which, immediately thereafter, reduced it to judgment. The amount of the judgment, including interest and attorneys' fees, was $17,590.74.

Early in August Dominion attached in the hands of

the bank securities belonging to Hammond and securing loans totaling $40,000 which he had borrowed from the bank and in turn loaned to HA. Hammond, taking the position that HA was then insolvent, persuaded Dominion to settle for $16,000. Dominion accepted the $16,000 from Hammond and assigned to him "all of its right and interest" in the judgment "together with all rights and interest" in the attachment. In May 1969 Hammond sued Harrison for contribution in the amount of $8,000. The case came on for trial before Moorman, J., without a jury, on 26 February 1970. At the close of the plaintiff's case Judge Moorman directed a verdict for Harrison. On 2 March Hammond filed a motion for a new trial. Four days later Judge Moorman filed an opinion in which he recited his understanding of the facts and gave his reasons for directing the verdict for Harrison relying, it seems, upon *In re Bitker's Estate,* 251 Wis. 538, 30 N.W.2d 449 (1947). On 12 March Hammond moved for a summary judgment. On 17 April Hammond's motion for a new trial came on for a hearing. On 23 June Judge Moorman filed an opinion and order granting the motion. He held that "[w]hen the judgment was obtained the note was merged therein," that the judgment had been satisfied, that the satisfaction of the judgment discharged the note and that Hammond was entitled to contribution under Maryland Rule 617 b. One month later, after a hearing, he granted Hammond's motion for summary judgment.

There followed a flurry of motions, oppositions to motions, answers, replies, affidavits, memoranda and briefs. On 10 November Judge Moorman disposed of them all and ordered the entry of judgment in favor of Hammond for $8,000. Harrison's appeal was filed shortly thereafter.

Harrison's principal argument is that Hammond is not entitled to contribution because he did not "pay or discharge" the common obligation, that, instead, he "bought" it. He argues also that contribution is not proper where the "primary maker" is solvent and in support of his second argument he claims HA had "more than suffi-

cient cash assets" to pay the note and also that Hammond prevented payment by HA. Finally he questions the propriety of the summary judgment, claiming a dispute in respect of material facts.

In our review of the result reached by Judge Moorman we shall consider the evidence that was before him in a light most favorable to Harrison and we shall resolve all inferences reasonably and logically deducible therefrom against Hammond. *Orrison v. Vance*, 262 Md. 285 (1971).

Judge Moorman held that Maryland Rule 617 b is applicable here and that, in the circumstances, proof of HA's insolvency was unnecessary. Rule 617 b provides as follows:

> "Where a judgment shall be rendered against several sureties and the amount unpaid on the judgment shall be satisfied by any of the sureties, the plaintiff shall be obliged to assign such judgment to the surety satisfying the judgment who shall be entitled to execution in his name against the other sureties in the judgment for a proportionate part of the judgment so paid by the assignee; provided, that no defendant shall be precluded from his remedy against the plaintiff, or his co-sureties by equitable proceedings."

It is at once apparent that the language of the rule postulates conditions precedent to its operation. There must be a "judgment" against "several sureties" and the judgment must have been "satisfied" by one of them. Clearly Dominion had a judgment against HA, Harrison and Hammond and the question whether Hammond was one of "several sureties" was not an issue here. In the court below, however, Harrison argued that he and Hammond were endorsers rather than sureties, making Rule 617 b inapplicable. But one must be mindful of the fact that Hammond and Harrison signed a confessed judgment note thereby waiving all of the conditions which must

ordinarily be met before the liability of an endorser can be established. Code (1964 Repl. Vol.), Art. 95B, § 3-414. They expressly consented to the entry of judgment against them along with HA. We hold, and our holding is limited to the circumstances of the case at bar, that they became sureties within the meaning of Rule 617 b. As stated by Professor Peters, "[a]ll indorsers * * * are a species of the genus surety; but not all sureties need be indorsers." E. A. Peters, *Suretyship Under Article 3 of the Uniform Commercial Code*, 77 Yale L.J. 833, 838 (1968). *See also* B. Clark, *Suretyship in the Uniform Commercial Code*, 46 Tex.L.Rev. 453 (1968); 2 Anderson, *Uniform Commercial Code* 1012 (2d ed. 1971).

We come then to what seems to be the pivotal question, i.e., has the judgment been "satisfied"? In support of his somewhat tenuous argument that it has not been satisfied Harrison has excised from *Bitker, supra,* language which he proffers as conclusive of his contention. The excised statement follows:

"* * * [T]he claim for contribution must rest upon the fact that a guarantor has paid or discharged more than his fair share of the liability guaranteed by himself and his co-guarantor. * * * [C]laimant did not pay or discharge any part of the indebtedness * * *. He alleges and his counsel states in open court that he purchased the claim. There is a clear distinction between payment and purchase. Payment extinguishes and discharges any indebtedness; purchase transfers title thereto to the payor or his nominee. If the debt is not discharged no claim for contribution can arise. The purchaser stands in the shoes of the assignor. The claimant could not after purchase pay or discharge any part of the claim due to himself. * * * Having failed to pay or discharge any part of the indebtedness * * * he has no claim

for contribution against his co-guarantor." 30 N.W.2d at 452.

We think *Bitker* is distinguishable from the instant case in many respects, not the least of which arises out of the actual basis for the decision. In the words of the Chief Justice, who wrote the majority opinion:

> "In this case the note, payment of which was guaranteed, became due on the 31st day of March, 1930. This proceeding was begun by filing of a claim against Estate of Jacob L. Bitker on May 2, 1946, the *ten year statute of limitation applies and the claim on the note is barred.* (Emphasis added.) *Id.* at 452.

Among other distinguishing features we might point out that, in *Bitker,* the plaintiff "bought" the $8,400 note for $3,000, that he had it assigned to a third person (his nominee), and that he asserted the right to collect from his co-surety the full amount of $8,400 with interest although, failing that, he said he ought to get at least one-half of $3,000. We think it is beyond question, in the case at bar, that Dominion, by accepting the $16,000 (virtually all of the debt), thereby surrendered all of its right, title and interest in respect of the note and the judgment. This, we are fully persuaded, constitutes the "satisfaction" contemplated by Rule 617 b, and since a common liability existed the parties were co-sureties and they are entitled to contribution one from the other. A. Stearns, *The Law of Suretyship* 481 (Elder ed. 1951).

But, says Harrison, Hammond was under no obligation to pay the debt because HA had assets which could have been used for that purpose. Perhaps the short and complete answer to Harrison's argument is that Rule 617 b does not require a finding of insolvency. It well may be, in other factual situations involving the solvency vel non of the principal debtor, that some inequity might result in requiring contribution by a co-surety. Rule 617 b seems to have contemplated that possibility by pro-

viding "that no defendant shall be precluded from his remedy against the plaintiff, or his co-sureties by equitable proceedings." In any event the vaunted solvency of HA seems to us to be something of a red herring. The record, together with the information provided by counsel at argument, puts it beyond question that HA's liabilities far exceeded its assets. Harrison insists there is a dispute of fact in this regard but, giving him the best of it, there was clearly not enough to pay the debts. Moreover the facts disputed are not material. We see no reason why Hammond should not have been free to recover his securities by satisfying the judgment instead of waiting and hoping that HA's assets would be sufficient for that purpose if and when they became available, a chancy business at best according to the record. Harrison argues that *Sheeler v. Holt,* 161 Md. 366, 374 (1931), requires a showing of the insolvency of the principal before contribution can be had from a co-surety. That was not the holding of the Court. Indeed there was really no holding. The case was remanded for further proceedings, without affirmance or reversal. In respect of insolvency there is only the casual comment by Chief Judge Bond, who wrote for the Court, that

> "[i]t is not directly stated that the corporation was insolvent, however, and while it seems from the facts given in evidence highly probable that it was, solvency may still be possible for all we can say from an examination of the record. An opportunity to establish the fact will be given upon a further hearing in the court below."

The record suggests that the collapse of HA may have been a disaster for Hammond. There seems to be no doubt that his $40,000 loan to HA will never be repaid. In the circumstances Harrison's reluctance to contribute one-half of the $16,000, if not commendable, is at least understandable. He can console himself with the notion that if, as he insists, HA is indeed solvent, both he and

Hammond should be able, ultimately, to recover from it the $16,000 or some part thereof. F. Whitney, *The Law of Modern Commercial Practices* 820 (1958).

*Judgment affirmed.*
*Costs to be paid by appellant.*